# IN THE SUPREME COURT, STATE OF WYOMING

## 2026 WY 85

**APRIL TERM, A.D. 2026**

**July 24, 2026**

THOMAS AVERY GLENN,

Appellant
(Defendant),

v.

S-26-0016

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Natrona County*
*The Honorable Kerri M. Johnson, Judge*

*Representing Appellant:*
Office of the State Public Defender: Patricia L. Bennett, Wyoming State Public Defender, Kirk A. Morgan, Chief Appellate Counsel. Argument by Mr. Morgan.

*Representing Appellee:*
Keith G. Kautz, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Leanne J. Johnston, Assistant Attorney General. Argument by Ms. Johnston

*Before BOOMGAARDEN, C.J., and GRAY, FENN, JAROSH, and HILL, JJ.*

*An Order Substituting Patricia L. Bennett for Brandon Booth was entered on April 15, 2026.

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Chief Justice.**

[¶1]    Sergeant Adam Uhrich of the Casper Police Department stopped Thomas Avery Glenn for failure to display a proper light while riding his bicycle at night. Sergeant Uhrich arrested Mr. Glenn on an outstanding warrant, and during an ensuing search, discovered two pipes with methamphetamine residue. Mr. Glenn claimed the stop was invalid at its inception and moved to suppress all evidence and statements obtained as a result of the stop. After the district court denied his suppression motion, Mr. Glenn entered a conditional guilty plea, reserving the right to appeal the denial of his motion. On appeal, he asserts the initial stop was invalid. He also raises issues relating to the stop's extension and ineffective assistance of counsel. We affirm, but do not reach the issues beyond the validity of the initial stop because Mr. Glenn waived those issues.

## ISSUES

[¶2]    The following issues are dispositive:

1.  Was Sergeant Uhrich's initial stop of Mr. Glenn supported by reasonable suspicion?

2.  Did Mr. Glenn waive issues concerning the extension of the stop and ineffective assistance of counsel?

## FACTS

[¶3]    In January 2024, Sergeant Uhrich was working the night shift and patrolling the area around North Glenarm Street and East H Street in Casper, Wyoming. As he traveled north on Glenarm Street and approached the intersection with H Street, he saw what appeared to be a person on a bicycle riding east through the intersection. Sergeant Uhrich did not see a light on the front of the bicycle, and when he came to the intersection and looked to his right, he saw the bicycle, but still saw no light. Based on his belief that the bicycle had no light, Sergeant Uhrich initiated a traffic stop.

[¶4]    As Sergeant Uhrich exited his patrol vehicle and approached the bicyclist, he recognized him as Mr. Glenn. He noticed the bicycle had a light on the front, but it was very dim. He explained the reason for the stop and acknowledged Mr. Glenn had a light, but told him it was required to project 500 feet in front of the bicycle, and it did not appear Mr. Glenn's light did so.

[¶5]    Sergeant Uhrich asked Mr. Glenn for identification, and Mr. Glenn gave his name. After answering a few more questions, Mr. Glenn said he believed there was an active warrant for his arrest. Sergeant Uhrich confirmed the warrant with dispatch and arrested Mr. Glenn. Before Sergeant Uhrich placed Mr. Glenn in his patrol vehicle, Mr. Glenn

1

advised he had "a pipe" on him. Sergeant Uhrich searched Mr. Glenn and found two pipes with a white powdery residue, which Sergeant Uhrich suspected to be methamphetamine. Sergeant Uhrich tested one of the pipes, and it resulted in a presumptive positive for methamphetamine.

[¶6]   The State charged Mr. Glenn with one felony count of methamphetamine possession under Wyo. Stat. Ann. § 35-7-1031(c)(i) (2023). Mr. Glenn filed a motion to suppress evidence and statements collected during the stop. He argued Sergeant Uhrich was mistaken in his understanding of Wyo. Stat. Ann. § 31-5-706(a) (2023) because the statute did not require Mr. Glenn's light to illuminate 500 feet in front of him, but instead required his light to be visible from 500 feet away.[1] He asserted Sergeant Uhrich had no idea whether Mr. Glenn's light was visible from 500 feet away and made no effort to find out. He also argued the stop was pretextual. Mr. Glenn argued these facts made the initial stop invalid and required suppression of all evidence and statements collected during the stop.

[¶7]   The district court held a hearing. At the beginning of the hearing, the court explained it believed "the issue in this case is whether the stop was justified. That's the sole issue we're dealing with today." Mr. Glenn's attorney and the State agreed only the initial stop was contested. Sergeant Uhrich was the only witness who testified. The State also played Sergeant Uhrich's dash camera and body camera footage depicting the stop.

[¶8]   At the end of the hearing, the court orally denied Mr. Glenn's motion. It found Sergeant Uhrich made a mistake of fact when he initially believed there was no light on Mr. Glenn's bicycle. However, the court found Sergeant Uhrich's mistake was reasonable under the circumstances. The court also found Sergeant Uhrich's "erroneous belief" as to the requirements of Wyo. Stat. Ann. § 31-5-706(a) did not affect the validity of the stop because Sergeant Uhrich stopped Mr. Glenn based on his mistaken but reasonable belief that there was no light at all.

---

[1] The statute provides:

> Every bicycle when in use at nighttime shall be equipped with a lamp on the front which shall emit a white light visible from a distance of at least five hundred (500) feet to the front and with a red reflector on the rear of a type approved by the highway department which shall be visible from six hundred (600) feet to the rear when directly in front of lawful lower beams of head lamps on a motor vehicle. A lamp emitting a red light visible from a distance of five hundred (500) feet to the rear may be used in addition to the red reflector.

§ 31-5-706(a)

[¶9]   Mr. Glenn entered a conditional guilty plea, reserving the right to appeal the denial of his motion to suppress evidence and statements. The district court sentenced him to two and one half to four years' imprisonment, suspended in favor of two years' supervised probation. Mr. Glenn timely appealed.

## *DISCUSSION*

### I.   *Sergeant Uhrich's initial stop of Mr. Glenn was supported by reasonable suspicion.*

[¶10]   We review the district court's denial of Mr. Glenn's motion to suppress under the following standard:

> In reviewing a denial of a motion to suppress evidence, we adopt the district court's factual findings unless those findings are clearly erroneous. We view the evidence in the light most favorable to the district court's decision because the court conducted the hearing and had the opportunity to assess the witnesses' credibility, weigh the evidence and make the necessary inferences, deductions and conclusions. On those issues where the district court has not made specific findings of fact, this Court will uphold the general ruling of the court below if supported by any reasonable view of the evidence.

*Schaub v. State*, 2024 WY 100, ¶ 8, 556 P.3d 215, 217–18 (Wyo. 2024) (quoting *Anderson v. State*, 2023 WY 65, ¶ 8, 531 P.3d 912, 914 (Wyo. 2023)) (citation modified). "However, the underlying question of whether the search and seizure was constitutional is a question of law, which we review de novo." *Schaub*, 2024 WY 100, ¶ 8, 55 P.3d at 218 (quoting *Anderson*, 2023 WY 65, ¶ 8, 531 P.3d at 914).

[¶11]   "A traffic stop," including a bicycle stop, "is a seizure within the meaning of the Fourth Amendment."[2] *Davis v. State*, 2025 WY 120, ¶ 12, 578 P.3d 805, 809 (Wyo. 2025) (citing *Kennison v. State*, 2018 WY 46, ¶ 13, 417 P.3d 146, 149 (Wyo. 2018)). Such a seizure is only lawful if supported by reasonable suspicion of criminal activity. *Davis*, 2025 WY 120, ¶ 12, 578 P.3d at 809 (citing *Anderson*, 2023 WY 65, ¶ 9, 531 P.3d at 914). "Reasonable suspicion exists when an officer can articulate a particularized and objective basis to suspect a [bicyclist] is violating the law." *Davis*, 2025 WY 120, ¶ 12, 579 P.3d at 809 (citing *Elmore v. State*, 2021 WY 41, ¶ 10, 482 P.3d 358, 361 (Wyo.

---

[2] Mr. Glenn challenges his seizure under the Fourth Amendment to the United States Constitution, but makes no independent argument under Article 1, § 4 Wyoming Constitution, which also prohibits unreasonable searches and seizures.

3

2021)). It is a lower bar than probable cause and requires a fact-based inquiry that takes into account the totality of the circumstances. *Davis*, 2025 WY 120, ¶ 13, 578 P.3d at 809.

[¶12] We evaluate a traffic stop under the Fourth Amendment using the two-part test from *Terry v. Ohio*, 392 U.S. 1, 19–20, 88 S. Ct. 1868, 1879, 20 L. Ed. 2d 889 (1968). We first ask whether the initial stop was justified, and then assess whether the officer's actions during the stop were reasonably related in scope to the circumstances that initially justified the stop. *Davis*, 2025 WY 120, ¶ 13, 578 P.3d at 809. Below, Mr. Glenn challenged only the initial justification for the stop. He renews that argument on appeal.

[¶13] Mr. Glenn notes, and the State does not dispute, that Sergeant Uhrich stopped Mr. Glenn because he believed Mr. Glenn's bicycle had no light on the front. He also correctly observes that "[t]he evidence in this case clearly proves that Mr. Glenn did have an operating headlight on his bicycle." However, "[t]o be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them fair leeway for enforcing the law[.]" *Boyer v. State*, 2025 WY 93, ¶ 13, 574 P.3d 161, 166 (Wyo. 2025) (quoting *Allgier v. State*, 2015 WY 137, ¶ 14, 358 P.3d 1271, 1276 (Wyo. 2015)) (internal quotation marks omitted). An officer may make a mistake of fact so long as it is objectively reasonable. *Boyer*, 2025 WY 93, ¶ 13, 574 P.3d at 166 (citing *Harris v. State*, 2018 WY 14, ¶ 18, 409 P.3d 1251, 1254–55 (Wyo. 2018)).

[¶14] Viewed in the light most favorable to the district court's decision, the record shows Sergeant Uhrich's mistaken belief that Mr. Glenn's bicycle did not have a light was reasonable. Sergeant Uhrich estimated he was 150 feet away from the intersection of Glenarm Street and H Street when he saw Mr. Glenn pass through the intersection. He acknowledged he first approached Mr. Glenn at a perpendicular angle and thus could not directly see the front of Mr. Glenn's bicycle. He also testified that once at the intersection, he looked to his right and could see no light coming from the front of the bicycle. Though at this point he viewed the bicycle from the back, and he had only previously viewed it from the side or at a diagonal angle, it was reasonable for Sergeant Uhrich to think he should have been able to see some light coming from the front of the bicycle, even when viewed from these indirect angles.

[¶15] Based on his observations, Sergeant Uhrich had a "particularized and objective basis" to suspect Mr. Glenn was violating the law by failing to display a light on the front of his bicycle.[3] *Davis*, 2025 WY 120, ¶ 12, 579 P.3d at 809 (citing *Elmore*, 2021 WY 41, ¶ 10, 482 P.3d at 361). We therefore conclude Sergeant Uhrich's initial stop of Mr. Glenn was supported by reasonable suspicion and thus did not violate the Fourth Amendment.

---

[3] We agree with the district court Sergeant Uhrich's understanding of Wyo. Stat. Ann. § 31-5-706(a) is irrelevant, as the failure to display any light would be a violation under any reading of the statute.

***II.*** ***Mr. Glenn waived his issues concerning the extension of the stop and ineffective assistance of counsel.***

[¶16] Though Mr. Glenn takes issue with the initial stop, he devotes most of his argument on appeal to the second prong of *Terry*: whether Sergeant Uhrich's actions during the stop were reasonably related in scope to the circumstances that initially justified the stop. *Davis*, 2025 WY 120, ¶ 13, 578 P.3d at 809. He argues "[o]nce Sgt. Uhrich observed the functioning headlight, which was the entire reason for the stop, Sgt. Uhrich should have explained the circumstances and the reason for the initial detention then allowed Mr. Glenn to continue without continuation of the stop." Mr. Glenn further argues if his counsel did not reserve this issue as part of Mr. Glenn's conditional plea, his counsel was ineffective.

[¶17] A defendant who pleads guilty normally waives all issues related to his guilt and conviction, except issues that challenge the court's jurisdiction or the voluntariness of the defendant's plea. *Allen v. State*, 2026 WY 72, ¶ 10, ___ P.3d ___, ___ (Wyo. 2026). However, an exception to this rule is found in W.R.Cr.P. 11(a)(2), which allows a defendant who enters a conditional guilty plea to "seek review of the adverse determination of any specified pretrial motion" with the consent of the trial court and the State. *See also McCalla v. State*, 2026 WY 18, ¶ 32, 583 P.3d 679, 688–89 (Wyo. 2026) (explaining a conditional plea provides an exception to the general waiver rule). A valid conditional plea requires: "(1) reservation of the right to appeal a specific issue in writing, (2) the State's consent, (3) the district court's approval, and (4) the issue reserved must be dispositive." *Stone v. State*, 2026 WY 22, ¶ 15, 583 P.3d 1216, 1219–20 (Wyo. 2026) (quoting *Kotrc v. State*, 2025 WY 114, ¶ 21, 578 P.3d 40, 43 (Wyo. 2025)). Because of the first requirement, we will not review an issue that falls outside "the scope of [a defendant's] reserved appellate rights." *McCalla*, 2026 WY 18, ¶ 35, 583 P.3d 679, 689 (Wyo. 2026).

[¶18] Mr. Glenn does not argue his additional issues are jurisdictional. Therefore, he waived his additional issues unless they are: 1) reserved in his conditional plea agreement; or 2) a challenge to the voluntariness of his plea. We address whether he waived each issue in turn, applying a de novo standard of review. *Stone*, 2026 WY 22, ¶ 13, 583 P.3d at 1219 ("The interpretation of a conditional plea under W.R.Cr.P. 11(a)(2) is a question of law that we review de novo.") (quoting *Kotrc*, 2025 WY 114, ¶ 18, 578 P.3d at 43); *Allen*, 2026 WY 72, ¶ 9, ___ P.3d at ___ ("Whether a defendant waives an appellate issue by pleading guilty is a question of law we review de novo.").

**A.** **Mr. Glenn did not reserve the extension of the stop in his conditional plea agreement.**

[¶19]   Mr. Glenn argues he reserved the issue of the extension of the stop. He highlights the following response his counsel gave to the district court's questioning about whether Sergeant Uhrich made a reasonable mistake of fact:

> So what the [c]ourt then says, if that's the case, then an officer can have a mistake of fact through their own -- without doing even due diligence and be like, oh, I'm sorry, sir, it appears you do have the right light.
> And so, in this case, then, if he pulled him over and he saw he had a light, he should have turned him loose. He shouldn't have asked him for his driver's license. He shouldn't have asked him for an ID. As soon as he pulled him over, if he went up there and he saw that there was a light on that bike -- because the reason he pulled him over was because he didn't see a light -- he has no evidence to suggest that it can't be seen from 500 feet. Then the recourse was, have a good day, sir, not to go into a where's your license, registration, question him about where he's going. That's all inappropriate. Either way, Judge, it's still an inappropriate stop.

[¶20]   Mr. Glenn concedes "defense counsel could have, and probably should have, more articulately advocated both prongs of the *Terry* analysis." Nonetheless, he points to our holding that "[i]n determining the scope of an issue brought to the district court's attention, we will read any ambiguity in the conditional plea agreement 'against the Government and in favor of a defendant's appellate rights.'" *Brown v. State*, 2019 WY 42, ¶ 13, 439 P.3d 726, 731 (Wyo. 2019) (quoting *United States v. Anderson*, 374 F.3d 955, 957 (10th Cir. 2004)). He argues that under this interpretive rule, we should conclude he reserved the issue of the extension of the stop.

[¶21]   We disagree the exchange cited by Mr. Glenn is sufficient to reserve the issue of the extension of the stop. First, the verbal exchange at the hearing does not satisfy the requirement that the issue be reserved "***in writing***[.]" *Stone*, 2026 WY 22, ¶ 15, 583 P.3d at 1219 (emphasis added). But more importantly, defense counsel's lone response to the district court's question does not change the character of Mr. Glenn's suppression motion, which discussed only the validity of the initial stop. His motion contained no argument that the stop was unlawfully extended. This is precisely why his attorney agreed at the hearing the only issue was the initial justification for the stop. Therefore, in our de novo interpretation of Mr. Glenn's conditional plea agreement, which reserved his right "to appeal the . . . denial of the *Defendant's Motion to Suppress Evidence and Statements*," we cannot conclude he reserved the right to address the extension of the stop on appeal.

**B.    Mr. Glenn's ineffective assistance of counsel argument does not implicate the voluntariness of his plea.**

[¶22]  Mr. Glenn argues if his counsel did not reserve the issue of the extension of the stop, his counsel was ineffective for failing to do so. Mr. Glenn does not argue his conditional plea agreement reserved the ineffective assistance issue. However, at oral argument, he suggested his ineffective assistance argument can be tied to the voluntariness of his plea based on *Kitzke v. State*, 2002 WY 147, ¶ 9, 55 P.3d 696, 699 (Wyo. 2002).

[¶23]  In *Kitzke*, Mr. Kitzke unconditionally pleaded guilty to possession of marijuana with intent to deliver. 2002 WY 147, ¶ 5, 55 P.3d at 698. On appeal, he raised three issues relating to his counsel's alleged ineffectiveness. *Id.*, ¶ 7, 55 P.3d at 698–99. We explained Mr. Kitzke's guilty plea waived all issues that did not relate to the jurisdiction of the court or the voluntariness of his plea. *Id.*, ¶ 8, 55 P.3d at 699. We concluded Mr. Kitzke's ineffective assistance claims were not jurisdictional. *Id.*, ¶ 9, 55 P.3d at 699. However, we observed "[w]hen a guilty plea has been entered upon the advice of counsel, the voluntariness of that plea may depend on the extent to which that advice comports with the constitutional guarantee to the effective assistance of counsel." *Id.* (quoting *Lower v. State*, 786 P.2d 346, 349 (Wyo. 1990)). We then analyzed whether Mr. Kitzke's counsel was ineffective, including whether counsel was ineffective for failing to file a motion to suppress evidence. *Kitzke*, 2002 WY 147, ¶¶ 10–16, 55 P.3d at 699–703.

[¶24]  In *Kitzke*, we proceeded directly from a general observation—that "the voluntariness of [a guilty] plea *may* depend on the extent to which" a defendant received effective assistance of counsel—to the merits of Mr. Kitzke's ineffective assistance of counsel issue. 2002 WY 147, ¶ 9, 55 P.3d at 699 (emphasis added) (quoting *Lower*, 786 P.2d at 349). However, our precedent indicates a more stringent standard than Mr. Glenn suggests for tying an ineffective assistance argument to the voluntariness of a plea.

[¶25]  In *Lower*, we also acknowledged ineffective assistance of counsel may result in an involuntary guilty plea. 786 P.2d at 349. In that case, however, Mr. Lower made a clear effort to tie his counsel's performance to the voluntariness of his plea:

> Appellant argues that counsel knew he needed the confinement of inpatient treatment to successfully combat his alleged addiction to marijuana and that his consent to any proposed plea agreement, and the prospect for his successfully completing any probationary program, was contingent upon his procuring such treatment. Appellant also contends he signed the plea agreement, which was subsequently approved by the district court, solely on the

7

assurances of counsel that the agreement guaranteed his enrollment in an inpatient substance abuse program. He now lays the blame for his continued cannabis consumption, and therefore his probation revocation, upon the failure of the court-ordered treatment program to adequately restrict his access to the illicit drugs. He asserts that he had informed his attorney of the foreseeability of this result and concludes that, had he known counsel's advice was faulty, he would have chosen to face a trial on the charges. Thus, appellant has challenged the voluntariness of his plea through his claim that counsel both failed to procure the desired treatment as part of the plea bargain and failed to inform him that such was the case.

*Id.* at 349. Though we ultimately disagreed with Mr. Lower that his plea was involuntary, we reviewed his ineffective assistance issue because he articulated a clear nexus between his counsel's actions and his decision to plead guilty. *See id.*

[¶26] Therefore, though our discussion in *Kitzke* was more abbreviated, it is clear a defendant claiming his counsel's ineffective assistance rendered his plea involuntary must actually show *how* the ineffective assistance and the voluntariness of his plea are connected. *See Lower*, 786 P.2d at 349. Mr. Glenn does not discuss the voluntariness of his plea in his brief, and made only a passing reference to *Kitzke* at oral argument. Instead, he simply argues counsel's motion to suppress would have been more effective had he included the second *Terry* prong in his motion and reserved that issue in Mr. Glenn's conditional plea agreement. To the extent *Kitzke* can be read to suggest that ineffective assistance of counsel argument automatically implicates the voluntariness of the defendant's plea, it is overruled.

[¶27] Mr. Glenn did not reserve the ineffective assistance of counsel issue in his conditional plea agreement. Because he has not sufficiently tied his belated argument to the voluntariness of his plea, there is no path to review this issue.

## *CONCLUSION*

[¶28] Sergeant Uhrich's initial stop was supported by reasonable suspicion and thus his seizure of Mr. Glenn was not unreasonable under the Fourth Amendment. Mr. Glenn failed to reserve the issues of the extension of the stop and ineffective assistance of counsel when he entered his conditional guilty plea. Further, his attempt to raise ineffective assistance of counsel does not include a claim that his conditional guilty plea was involuntary. We therefore affirm.